```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  AMED GIRON,

                      Plaintiff,                MEMORANDUM & ORDER
                                                22-cv-3558 (EK)(SIL)
           -against-

  REFINED STONE LTD. and DARREN
  ADAMCHAK


                      Defendants.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Amed Giron brought this action against his former employer, Refined Stone Ltd., and an individual named Darren Adamchak.  Giron sues to recoup unpaid wages, overtime, and other damages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Am. Compl. ¶¶ 1-2, ECF No. 18.  He also brings common law claims for unjust enrichment and breach of contract, and a retaliation claim under NYLL § 215.  *Id.* ¶ 3.

        Before the court is defendants' motion to dismiss for failure to state a claim.  ECF No. 20.  For the reasons that follow, the motion is denied.

## I.  Background

        The following facts are taken from the Amended Complaint as well as the Bonus Agreement and Post Employment

Release appended thereto, ECF No. 18-1.[1]  Plaintiff's allegations are assumed to be true for purposes of this motion.

Giron worked as a stone cutter at Refined Stone for fifteen years, from 2006 to 2021.  Am. Compl. ¶¶ 24-25.  The complaint does not reveal defendant Adamchak's title, but describes him as having "actively participated" in Refined Stone's business and "exercised substantial control over" its employees.  *Id.* ¶¶ 17-22.

In brief, Giron alleges he was underpaid and permitted no sick days, personal days, or meal breaks during the workday.  *Id.* ¶¶ 31-37.  He worked "approximately [seventy-five] hours per week," but "was never paid for more than [forty] hours."  *Id.* ¶¶ 31-34.

The facts most relevant to the instant motion are those surrounding Giron's termination and his execution of two releases.  Giron alleges that he had a pre-approved vacation planned for December 16 through December 31, 2021.  *Id.* ¶ 39.  On the day he was scheduled to leave, defendants presented him with a "Bonus Agreement and General Release" (the "Bonus Agreement").  *Id.* ¶ 40.  Paragraph 1 of that document provided for Giron to receive an "Additional Bonus" of $1,500, "above and

---

[1] The same documents were attached to defendants' motion for a pre-motion conference.  *Compare* ECF No. 18-1 *with* ECF Nos. 9-1, 9-2.  The Court cites to those documents instead as they contain legible ECF pagination. Citations to the Agreements refer to paragraphs by their native paragraph number and pages by their ECF pagination.

2

beyond Employee's regular annual bonus." Bonus Agreement ¶ 1, ECF No. 9-1. Paragraph 2 set out a release covering almost two full pages, extending to all claims Giron might have against the company, whether "known or unknown," including claims under the FLSA and any "New York wage and hour laws." *Id.* ¶ 2. This agreement bears Giron's signature and is dated December 16, 2021. *Id.* at 7. It does not appear to be countersigned.

Attached to the Bonus Agreement as Exhibit A is another contract titled "Post-Employment Release," which provided for an additional "Severance Payment" of $1,000 in consideration for Giron's release of "any and all" legal claims against defendants, including claims under more than two dozen statutes, as well as "tort claims," and "any breach of contract claims." Post-Employment Release ¶ 2, ECF No. 9-2. This agreement also bears Giron's signature, and it is countersigned by Adamchak. Both signatures are dated December 16, 2021. *Id.* at 5.

Although Giron is a native Spanish speaker, with a limited understanding of spoken English and "no understanding" of written English, Am. Compl. ¶ 29, the Bonus Agreement and Post-Employment Release (collectively, the "Agreements") were provided only in English. *Id.* ¶ 42. Giron alleges that Adamchak told him that "he was signing a document which was a change in the company policy to ensure that the company was

3

operating legally." *Id.* ¶ 41. Further, despite Giron's request for time to review the Agreements, the defendants informed him that he would not be paid for the time he had worked or for his scheduled vacation if he did not sign them immediately.[2] *Id.* ¶¶ 43-44. Giron therefore signed the Agreements and left for his vacation, apparently unaware that the documents provided for his separation from the company. *Id.* ¶¶ 49, 66; *see also* Post-Employment Release 1. While he was away, he was "informed by a friend" that he had been replaced with another worker. *Id.* ¶¶ 46, 51.

Giron alleges that he was later able to review the Agreements with an English-speaking friend, and learned that they indicated that he would not receive overtime pay and had released defendants from all legal and equitable claims. *Id.* ¶ 52. Finally, Giron states that, upon returning to work on January 1, 2022, he raised concerns about the Agreements with the defendants and "disaffirmed" them; in response, the defendants "retaliated against and terminated" him. *Id.* ¶¶ 54-55.

Defendants now move to dismiss the complaint in its entirety, arguing that the releases set forth in the Agreements

---

[2] Plaintiff's original complaint alleged that he was informed that, if he did not sign the Agreements, he would be terminated. Compl. ¶ 38, ECF 1. His amended complaint repeats that allegation, Am. Compl. ¶ 60, 77, but also added these new allegations. This (supposed) discrepancy between the two versions of the complaint is taken up in greater detail below.

bar Giron's claims.  Defs.' Mem. Of L. in Support of their Mot. to Dismiss ("Defs.' Mem") 1, ECF No. 20-1.  In addition, they contend that Giron's retaliation claims are rendered implausible by the contents of the Agreements and the Amended Complaint itself.  Giron, in turn, asserts that the Agreements are unenforceable under the FLSA and are void and voidable as a matter of New York law — specifically, that he signed them only due to economic duress and fraud, and that they are unconscionable.  Pl. Mem. In Opp. to Mot. to Dismiss ("Pl. Mem.") 7-8, ECF No. 20-2.

The defendants' arguments do not warrant dismissal at this stage in the litigation.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  At the same time, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III. Discussion

The central question at this stage is whether the Agreements released Giron's claims.  Based on Giron's pleadings the Court cannot conclude the releases are enforceable.

**A.   Affirmative Defenses On A Motion To Dismiss**

"In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading."  *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017); Fed. R. Civ. P. 8(c)(1).  Even so, "[d]efendants may raise affirmative defenses at the motion to dismiss stage."  *United States v. EZ Lynk, SEZC*, 149 F.4th 190, 198 (2d Cir. 2025).  Because "affirmative defenses often require consideration of facts outside of the complaint," a "district court may grant a motion to dismiss for failure to state a claim on the basis of an affirmative defense only when facts supporting the defense appear on the face of the complaint."  *Id.* at 199.

6

Here, Giron actually did plead the facts on which the defendants seek dismissal: namely, that he executed the releases in question. Compl. ¶¶ 39, ECF No. 1. Giron then sought — and was granted — leave to amend specifically to add factual content about the Agreements' enforceability. *See* Giron Ltr. Mot. to Amend 2, ECF No. 15 (seeking leave to add "factual statements" about why the Agreements are "void, voidable, and unconscionable"); ECF No. 17. His amended complaint attached the Agreements, incorporating them by reference. *See* ECF No. 18-1. The amended complaint also pleads various exceptions to the release defense: specifically, that the release of his *federal* claims violates the FLSA, and that the releases are invalid in their entirety under several common-law doctrines: fraud in the inducement, fraud in the factum, duress, and unconscionability. *See, e.g.*, Am. Compl. ¶¶. 58, 75, 99.

Because all of this material appears on the face of Giron's complaint (or is incorporated therein), the affirmative defense of release — and Giron's arguments for rejecting it — are properly considered at this stage. *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 156-57 (2d Cir. 2012) (affirming dismissal on timeliness, an affirmative defense, where complaint invoked but insufficiently alleged tolling); *Bensky v. Indyke*, 743 F. Supp. 3d 586, 592-96 (S.D.N.Y. 2024) (considering release's enforceability on motion to dismiss).

7

## B. Operative Pleading

In the course of such consideration, we credit the truth of the complaint's factual claims. The question quickly follows, however: *which* complaint? The facts differ between the initial and amended complaints. For example, Plaintiff initially alleged that the defendants threatened to fire him if he did not sign the "Illegal Bonus Agreement": in that case, "he would be terminated." Compl. ¶ 38.

Giron's Amended Complaint goes beyond this in two key ways. First, he now pleads that he was compelled (and fraudulently induced) to sign *both* release agreements. Am. Compl. ¶ 44 (referring to the "Illegal Bonus Agreement and Illegal Release"). Second, he now pleads that the defendants threatened a broader range of consequences if he refused to sign. Not only would he be terminated, but "he would not be paid for the time he worked and would not be paid for his scheduled and approved vacation." *Id.* ¶¶ 44, 59-60, 77.

The defendants argue generally that the Court "is not constrained to assume" the truth of facts alleged in the Amended Complaint "to the extent they are contradicted by . . . Plaintiff's original complaint." Defs.' Mem. 7. The only specific allegation that the defendants argue identify as contradictory, however, is the "entirely different purported

8

threat" in Giron's amended complaint that his pay would be withheld if he did not sign the Agreements. *Id.* at 11-12.

This request is contrary to Second Circuit law. "Even if plaintiff's statements in an earlier complaint are determined to be inconsistent with allegations in the superseding complaint," the Court must look to only the amended pleading when deciding a motion to dismiss. *McCray v. Lee*, 963 F.3d 110, 119 (2d Cir. 2020). Prior inconsistent statements "may be admissible against the plaintiff in later stages of the proceedings as admissions," but "consideration of a motion under Rule 12(b)(6) is limited to the contents of the operative complaint and documents attached to it or incorporated into it by reference." *Id.*; *see also Oberlander v. Coinbase Glob. Inc.*, No. 23-cv-184, 2024 WL 1478773, at *3 (2d Cir. Apr. 5, 2024) (district court erred by disregarding allegations in amended complaint that contradicted initial complaint). *But see Feaster v. City of New York*, No. 18-CV-5021, 2020 WL 2485984, at *3 (S.D.N.Y. Mar. 2, 2020), *aff'd*, No. 20-1122, 2021 WL 4597766 (2d Cir. Oct. 7, 2021).

Here, most of the allegations in Giron's Amended Complaint actually supplement the initial pleading, rather than directly contradicting it. Based on that observation, as well as the cases cited above, the Court considers the Amended Complaint as written.

9

## C. Enforceability of the Agreements

### 1. The Record Does Not Establish the Enforceability of the FLSA Release

The Court cannot say, at this early stage, that Giron's release of FLSA claims is enforceable. Indeed, there is substantial doubt (at least) as to whether a pre-litigation release of FLSA claims is enforceable *at all*. In *Mei Xing Yu v. Hasaki Restaurant*, the Second Circuit stated that the Supreme Court's jurisprudence "compel[s]" the conclusion "that purely private settlements of FLSA claims, independent of any litigation, are prohibited without judicial approval or [Department of Labor] supervision." 944 F.3d 395, 406-07 (2d Cir. 2019) (citing *D.A. Schulte v. Gangi*, 328 U.S. 108 (1946)).

One thing is clear: *if* such a release can be enforced, the party seeking to enforce it will need to demonstrate that the employee executed the release to compromise a "bona fide dispute" — for example, as to the number of hours the employee actually worked — rather than simply to relinquish statutorily mandated compensation. *See Cheeks v. Freeport Pancake House, Inc.*, 96 F.3d 199, 203 (2d Cir. 2015) (noting the "open" question of "whether employees can enforce private settlements of FLSA claims where there is a bona fide dispute as to liability"); *see also Melendez v. Rockaway Maint. Partners*

10

*Corp.*, No. 22-CV-10679, 2023 WL 8113382, at *4 (S.D.N.Y. Nov. 22, 2023) (collecting cases).

Here, neither the complaint nor the documents attached thereto even suggest, let alone conclusively establish, the existence of a bona fide dispute.  Indeed, the pleadings tend to suggest the opposite: that Giron was unaware that his employer was even contemplating resolution of his overtime claims.  Am. Compl. ¶ 82 ("At no time did Adamchak advise that once signed, Plaintiff would relinquish any right to his duly earned overtime and be unable to bring an action for the amounts due to him."). The pleadings set forth no factual content suggesting that the parties had engaged in a substantive dispute about how many hours Giron worked or what he was actually paid.  Defendants' motion to dismiss Giron's FLSA claims thus cannot be granted.

2. The Unconscionability Defense is Adequately Pleaded Barring Enforcement of the Releases on a Motion to Dismiss

The preceding analysis concerns only the enforceability of the release of Giron's FLSA claims.[4]  But the defendants have moved to dismiss Giron's state claims as well. The motion likewise fails as to those claims.  Given Giron's allegations, we cannot say at this stage that he will be unable

---

[4] As defendants note, and plaintiff does not dispute, New York courts routinely uphold pre-litigation releases of NYLL claims.  *E.g.*, *Difilippo v. Barclays Cap.*, Inc., 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008).

11

to overcome the release on the basis of fraud, duress, or unconscionability.

An unconscionable contract is one "which is so grossly unreasonable as to be unenforceable because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Barocas v. Barocas*, 942 N.Y.S.2d 491, 493 (N.Y. App. Div. 1st Dep't 2012). Generally, New York law requires a showing of both procedural *and* substantive unconscionability. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).

    a.   Procedural Unconscionability

"The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 2d Dep't 1983). Procedural unconscionability may arise through "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties." *Id*.

Per the amended complaint, the defendants told Giron that if he did not sign the Agreements immediately, he would not receive wages he had *already earned*. Am. Compl. ¶¶ 42-50. He also alleges that they lied to him about the contents of the

12

Agreements, *id.* ¶ 41, and the complaint can be read to imply (at this stage) an imbalance of bargaining power. We cannot say whether any of this will actually suffice to establish procedural unconscionability. But this motion comes in a relatively unusual posture, in which we confront an *exception* to an *affirmative defense* to a *cause of action* — all against a factual background that has yet to be developed. Given that, we cannot say now that the release is enforceable as a matter of law.

      b.   Substantive Unconscionability

The doctrine of substantive unconscionability "looks to the content of the contract, per se." *Wolowitz*, 468 N.Y.S.2d at 145. In evaluating substantive unconscionability courts consider "the relative benefit of the bargain to the parties at the time of its making." *United States v. Bedford Assocs.*, 657 F.2d 1300, 1313 (2d Cir. 1981). Here, plaintiff alleges underpayment of roughly $500,000, and that he received only $2,500 to relinquish his rights. *See* Pl. Mem. 17. This amounts to roughly 0.005% of his claimed damages.

"Where the disparity in the consideration exchanged by the parties is overwhelming, that factor alone may be sufficient to sustain a finding that the contract is unconscionable." *Matter of Friedman*, 407 N.Y.S. 999, 1008 (N.Y. App. Div. 2d Dep't 1978). And New York law counsels that, "where a contract

13

provision may be unconscionable, the parties are to be afforded the opportunity to present evidence." *Wolowitz*, 468 N.Y.S.3d at 145. Again, Giron may or may not be able to adduce evidence sufficient to satisfy the standard for substantive unconscionability, but dismissal at this stage would be premature.

3. Other Arguments about Enforceability

Given the foregoing, the Court need not reach the parties' other arguments about enforceability. There is some reason to be skeptical. *See, e.g., Golden Stone Trading, Inc. v. Wayne Electro Sys., Inc.*, 889 N.Y.S.2d 72, 74 (N.Y. App. Div. 2d Dep't 2009) (plaintiff's "inability to speak English" did not "invalidate the contract"); *Nelson v. Stanley Blacker, Inc.*, 713 F. Supp. 107, 109-110 (S.D.N.Y. 1989) (economic duress claim based on threat of withheld compensation unavailing); *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 599 (N.Y. 1959) (fraud in the inducement must be based on facts "peculiarly within" the other parties' knowledge). These questions, however, are properly saved for a later day.

C. **Retaliation**

Giron also brings claims for retaliation under NYLL Section 215. In support, he alleges that the defendants terminated him following his return from vacation on January 1, 2022, because he voiced concerns about, and objections to, the

14

terms of the Agreements.  Am. Compl. ¶ 54-55.  The defendants respond that they could not have terminated him in retaliation for his post-vacation complaints because they fired him *before* he left — and that the terms of the "Post-Employment Release" prove it.

It is true that the Post-Employment Release clearly contemplates Giron's termination.  In bold type, it states that it is "TO BE EXECUTED ONLY AFTER EMPLOYEE'S SEPARATION FROM THE COMPANY."  Post-Employment Release 1.  And Giron does not dispute that he *signed* the document on December 16, 2021, even if he claims not to have understood it at that point.

The contract does tend to undermine the retaliation claim.  In New York state courts, as here, when "a complaint and a contract alleged in it and attached to it conflict, the provisions of the contract govern."  *Bosco v. Alicino*, 184 N.Y.S.2d 862, 863 (N.Y. Sup. Ct. 1959).  But as noted above, the circumstances of the contract and its execution remain hotly disputed and are still developing.  Given that, and given that Giron's other claims are moving forward, the Court will not (at this stage) rule out the metaphysical possibility that Giron can harmonize his allegations of retaliation with the documentary record adduced to date.  This, too, must await discovery and any motion practice on summary judgment.

15

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied.

SO ORDERED.

                                                  /s/ Eric Komitee
                                                  ERIC KOMITEE
                                                  United States District Judge

Dated:    September 28, 2025
             Brooklyn, New York